UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                                |   |                                   |
|--------------------------------|---|-----------------------------------|
| THEODORE BERRY                 | ) |                                   |
|                                | ) |                                   |
| Plaintiff,                     | ) |                                   |
|                                | ) |                                   |
| v.                             | ) | Civil Action No. 12-01420 (ABJ)   |
|                                | ) |                                   |
| COASTAL INTERNATIONAL          | ) |                                   |
| SECURIT, INC.                  | ) |                                   |
|                                | ) |                                   |
| Defendant.                     | ) |                                   |

**MEMORANDUM OPINION**

Plaintiff Theodore Berry brought this action against his employer, Coastal International Security, Inc., in the Superior Court of the District of Columbia, alleging age discrimination and retaliation in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Stat. § 14-201.11. After removing the case to this Court, defendant moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) and Local Civil Rule 7(a) on the grounds that plaintiff's claims are preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

After a review of the pleadings, the Court concludes that plaintiff's age discrimination claim is preempted by section 301 because it is founded upon rights created by the CBA. But the Court finds that plaintiff's retaliation claim is not preempted by section 301 because it is independent of the CBA. Therefore, the Court will grant defendant's motion with respect to the age discrimination claim and deny the motion with respect to the retaliation claim.

# BACKGROUND

The following facts are taken from the complaint and are undisputed for the purposes of this motion. *See* Mem. in Supp. of Def.'s Mot. to Dismiss ("Def.'s Mem.") [Dkt. # 2-1] at 2 n.1. Plaintiff Theodore Berry is employed by defendant Coastal International Security, Inc. ("Coastal") as a security officer at the Ronald Regan Building and International Trade Center ("RRB") in Washington, D.C. Compl., Ex. A to Notice of Removal [Dkt. # 1-2] ¶ 13. Plaintiff's employment with defendant is governed by a collective bargaining agreement ("CBA") between defendant and his union. *See* Compl. ¶¶ 31, 60; *see also* Agreement Between Coastal International Security, Inc. and the International Union, Security, Police and Fire Professionals of America (SPFPA) and its Amalgamated Local 288, Ex. 1 to Def.'s Mot. to Dismiss ("CBA") [Dkt. # 2-2].[1] According to the complaint, plaintiff – who began working at the Reagan building before defendant received its contract to provide security services – has seniority over all of the employees at RRB. Compl. ¶ 15.

During the time period involved in the complaint, plaintiff was supervised by Gregory Steele (his direct supervisor), Nkrumah Williams (the RRB contract manager), Lieutenant Colonel Summers (a supervisor), and Frank Duran (the regional manager). Compl. ¶¶ 17, 20, 23, 37. Steele, Williams, and Summers are all in their forties. Compl. ¶¶ 18–24. Plaintiff was sixty years old at the time of the events he describes. Compl. ¶ 11.

---

1    The Court can consider the CBA in resolving defendant's motion to dismiss because the document is referred to in the complaint and is therefore incorporated by reference. *See, e.g.,* Compl. ¶¶ 31, 60; *see also EEOC. v. Saint Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (stating that on a motion to dismiss, the court may consider "any documents attached to or incorporated in the complaint . . . ."); *Hinton v. Corrections Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (stating that on a motion to dismiss, the court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.") (internal quotation marks and citations omitted).

Plaintiff alleges that in October of 2010, Summers threatened to terminate him. Compl. ¶ 23. Plaintiff then filed a complaint against Summers, but he was not informed of what action, if any, defendant took against Summers based on that complaint. Compl. ¶¶ 26–27.

In December of 2010, plaintiff applied for a shift supervisor position. Compl. ¶ 29. The complaint notes that the CBA requires defendant to promote employees based on "rank and seniority." Compl. ¶ 31; *see also* CBA § 16.3. Plaintiff asserts that although he "was more qualified for [the shift supervisor] position than any other applicant because he had rank and seniority advantages over each person who applied for the position," he was not selected. Compl. ¶¶ 30, 32. According to plaintiff, three younger and less qualified men were chosen for the position. Compl. ¶ 33. Plaintiff told his supervisors – Steele, Williams, and Duran – that he believed that his non-selection was a result of age discrimination. Compl. ¶ 37. Steele allegedly exacerbated plaintiff's concerns about age discrimination by referring to him as a "grandpa type." Compl. ¶ 38.

Ultimately, on April 18, 2011, plaintiff was promoted to shift supervisor under a 90-day probationary period. Compl. ¶ 42. About a week after the 90-day probation period would have ended, Steele told plaintiff that his probationary period would be ongoing for 120 days. Compl. ¶ 44. Plaintiff complains that this 120-day probationary period "was not agreed upon nor the norm." *Id.* Steele believed that plaintiff's probationary period would end on August 26, 2011, but according to plaintiff, his probationary period ended on August 18, 2011. Compl. ¶¶ 45–46.

On August 23, 2011 – during the period when Steele was of the understanding that plaintiff was still on probation – Steele issued four disciplinary Personnel Action Reports ("PARs") against plaintiff. Compl. ¶ 47. Steele then recommended that plaintiff be dismissed based on the PARs. Compl. ¶ 59. Plaintiff asserts that Steele and Williams issued the PARs to

prevent him from retaining his position as shift supervisor. Compl. ¶¶ 48, 58. He also alleges that the recommended dismissal was contrary to the CBA's "protocol for disciplinary progression," which includes a verbal warning, a written warning, a suspension, and then dismissal. Compl. ¶ 60. Further, plaintiff contends that although the CBA requires defendant to investigate a PAR, defendant failed to investigate plaintiff's four PARs. Compl. ¶¶ 62–63; *see also* CBA § 7.1. Plaintiff appealed Steele's recommended dismissal on the grounds that it was based on unlawful age discrimination. Compl. ¶ 64. Plaintiff was allowed to remain in his position as a shift supervisor, and he attributes that turn of events to his appeal. Compl. ¶ 65.

On September 12, 2011, Steele gave plaintiff a three-day suspension notice based on his PARs. Compl. ¶ 66. Plaintiff scheduled a meeting with Williams, the RRB contract manager, to appeal the suspension notice, but the meeting was canceled and never rescheduled. Compl. ¶ 69. He also alleges that no one was interviewed in relation to his suspension, and he never received an "objective hearing" regarding his appeal. Compl. ¶ 70. Plaintiff served his three-day suspension. Compl. ¶ 67.

On June 29, 2012, plaintiff was suspended indefinitely without pay for responding to a distress alarm instead of allowing another staff member to take a bathroom break. Compl. ¶ 74. Plaintiff contends that he was required by protocol to investigate the distress call, and that the staff member was not harmed by his decision. Compl. ¶¶ 75–76. According to plaintiff, the suspension was in retaliation for his prior opposition to his supervisors' attempt to dismiss him in 2011. Compl. ¶ 77.

On July 13, 2012, plaintiff brought this action against Coastal in the Superior Court of the District of Columbia. Compl. at 1. He asserted that defendant's employees discriminated against him on the basis of his age and retaliated against him for resisting their attempts to

4

terminate his employment in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Stat. § 14-201.11. Compl. ¶¶ 78–92. Defendant removed this action to this Court pursuant to 28 U.S.C. §§ 1331, 1441(b), and 1446 on the grounds that plaintiff's claims are preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Notice of Removal [Dkt. # 1] ¶¶ 7, 11.

Defendant then moved to dismiss plaintiff's complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6) and Local Civil Rule 7(a). Def.'s Mot. to Dismiss [Dkt. # 2] at 1; Def.'s Mem. at 1. Defendant contends that plaintiff's age discrimination and retaliation claims "undoubtedly require interpretation of the CBA" and, therefore, are preempted by section 301 of the LMRA. Def.'s Mem. at 6. According to defendant, since plaintiff's claims are preempted by federal law, they fail to state a claim under the DCHRA and must be dismissed under Rule 12(b)(6). Def.'s Mem. at 7–8. Plaintiff opposes the motion and argues that his claims are not preempted because they require "no construction or interpretation" of the CBA. Opp. to Mot. to Dismiss ("Pl.'s Opp.") [Dkt. # 4] at 1.

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 556 U.S. at 678. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.

5

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id*., quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed liberally in plaintiff's favor, and the Court should grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

**ANALYSIS**

Section 301 of the Labor Management Relations Act ("LMRA") provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has stated that section 301 confers federal jurisdiction over controversies involving collective bargaining agreements and "authorizes federal courts to fashion a body of federal law for the enforcement of these collective-bargaining agreements." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988), quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957). Accordingly, section 301 completely preempts any action predicated on state law if that action is either: (1) founded upon rights created by a collective bargaining agreement; or (2) substantially dependent upon analysis of that agreement. *Lingle*, 486 U.S. at 405, 410 n.10; *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985).[2]

But not every dispute "tangentially involving a provision of a collective-bargaining agreement[] is preempted by § 301 or other provisions of the federal labor law." *Allis-Chalmers*, 471 U.S. at 211. "[A] plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement." *Caterpillar v. Williams*, 482 U.S. 386, 396 (1987).

Here, defendant maintains that plaintiff's age discrimination and retaliation claims are preempted by section 301 and should be dismissed for failure to state a claim under the DCHRA because those claims "are inextricably intertwined" with the CBA governing his employment. Def.'s Mem. at 1–2. Plaintiff counters that defendant's motion should be denied because his case "involves no construction or interpretation of the collective bargaining agreement." Pl.'s Opp. at 1. But the preemption analysis involves more than just the question of whether it would

---

2   Section 301 also authorizes the removal to federal court of claims that purport to seek relief only under state law. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6–8 (2003) ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under 28 U.S.C. § 1441(b) . . . .").

be necessary to interpret or construe the CBA to resolve plaintiff's claims; the Court must ask: what is the source of the right that the plaintiff is trying to vindicate? *See Caterpillar*, 482 U.S. at 396. Accordingly, the Court finds that plaintiff's age discrimination claim is preempted by section 301 because it is expressly founded upon rights created by the CBA. However, the retaliation claim seeks to vindicate rights that are independent of the CBA, and a resolution of that claim would not involve the interpretation or application of the CBA, so it is not preempted. Defendant's motion to dismiss will therefore be granted in part and denied in part.

**A. Plaintiff's age discrimination claim is preempted by section 301.**

In Count I, plaintiff alleges that defendant's employees discriminated against him on the basis of his age in violation of the DCHRA, D.C. Stat. § 14-201.11, and subjected him to a hostile and abusive work environment. Compl. ¶¶ 78–86. Plaintiff's age discrimination claim is predicated upon four allegedly adverse employment actions that his supervisors took against him, recounted in sections A through D of the complaint. Compl. ¶¶ 29–77. Since plaintiff specifically alleges that the challenged employment actions were taken in violation of rights created by the CBA, the age discrimination claim is preempted under section 301.

1. *Section A: "Non-selection for shift supervisor position"*

The first employment action that plaintiff describes is his non-selection for a shift supervisor position. Plaintiff argues that his assertion that his non-selection was based on age discrimination is not preempted by section 301 because he "makes no claim that he was the most senior employee and therefore entitled to the promotion" under the CBA. Pl.'s Opp. at 18. This argument is belied by the allegations in the complaint.

In December 2010, plaintiff applied for a shift supervisor position. Compl. ¶ 29. He asserts that he "was more qualified for this position than any other applicant because he had rank

and seniority advantages over each person who applied for the position." Compl. ¶ 30. This is a clear reference to the CBA, and the point was underscored when plaintiff specifically alleged: "Regarding said placement, Union rules, which have been formalized in the Union Agreement with Defendant, require that when an opening occurs, placement is determined by rank and seniority." Compl. ¶ 31; *see* CBA § 16.3 ("In the event that a higher level job becomes available, first preference shall be given to the most senior Employee who is available and qualified to perform the duties thereof."). Plaintiff alleged in his complaint that despite these "Union rules," defendant selected three younger, less qualified men for the job. Compl. ¶¶ 30, 33. He then states: "plaintiff believed that this non-selection for the position was due to his age." Compl. ¶ 36.

The only reason plaintiff provides for why he was "more qualified for the position" is his seniority and rank under the CBA. He alleges that the individuals selected for the position were less qualified, but he does not provide any facts to support this conclusion beyond the allegation that they were less senior. *See generally* Compl. ¶¶ 29–38. The fact that plaintiff attributes defendant's failure to comply with the CBA to age discrimination does not alter the fundamental nature of his allegation, which is that he was not accorded the seniority to which he was entitled under the CBA. Since the seniority privileges and the rules regarding promotions that plaintiff seeks to vindicate derive from the CBA, his age discrimination claim based on his non-selection

is preempted by section 301.³ *See Lingle*, 486 U.S. at 410 n.10 ("Section 301 governs claims founded directly on rights created by collective-bargaining agreements . . . .").

Plaintiff's reliance on this Court's decision in *Daniels v. Potomac Elec. Power Co.*, 789 F. Supp. 2d 161 (D.D.C. 2011) is inapposite. In that case, the Court held that the plaintiff's DCHRA claims were not preempted by section 301 because the plaintiff did not mention the CBA in his complaint and his claims were "based on rights created by DCHRA and not rights created by the CBA." *Id.* at 164–65. *Daniels* is distinguishable because as the Court has explained, here, plaintiff's claim regarding his non-selection for the shift supervisor position is based upon rights created by the CBA, and therefore, it is preempted by section 301.⁴

---

3   Plaintiff contends that he only mentioned the CBA rules regarding promotions to underscore that his supervisors knew their actions were wrongful and violated the company's policies. Pl.'s Opp. at 18; *see also id.* at 3–5, 11 (arguing that the complaint refers to the CBA as evidence of his supervisors' discriminatory intent). The CBA rules may be relevant for determining the knowledge and intent of plaintiff's supervisors. But that does not alter the fact that plaintiff's non-selection claim is founded upon rights created by the CBA, and therefore, it is preempted by section 301.

4   Plaintiff's non-selection claim is also preempted because it depends in part upon analysis of the CBA. To establish a prima facie case of discrimination under the DCHRA, plaintiff must show that: (1) he belongs to a protected class; (2) he was qualified for the job at issue; (3) the adverse action occurred despite his qualifications; and (4) the adverse action was based on the characteristic that placed him in the protected class. *Futrell v. Dept. Labor Fed. Credit Union*, 816 A.2d 793, 803 (D.C. 2003). Determining whether plaintiff has met the second element will most likely involve substantial analysis of the CBA because the evidence plaintiff proffers concerns his seniority and the CBA's rules about promotions. Compl. ¶¶ 30–34.
   Plaintiff cites *Sokos v. Hilton Hotels Corp.*, 283 F. Supp. 2d 42, 51 (D.D.C. 2003) to support his argument that his discrimination claim is not preempted because it is independent of the CBA. Pl.'s Opp. at 14–15. In *Sokos*, the plaintiff brought a negligent hiring, supervision and retention claim against his employer on the grounds that it knew that one of its employees was unfit and incompetent and failed to supervise that employee's employment decisions. *Id.* The Court held that this claim was not preempted by section 301 because it did not require interpretation of the terms of the CBA. *Id. Sokos* is distinguishable because while the determination of whether an employee is incompetent or whether an employer knew of an employee's incompetence is independent of the CBA, here, plaintiff relies on the CBA to demonstrate his superior qualification for the position he was denied, which is one of the elements of a discrimination claim. Compl. ¶¶ 30–34.

2. *Section B: "Problems with Selectees result in Plaintiff being blamed"*

On April 18, 2011, plaintiff was promoted to shift supervisor subject to a 90-day probationary period. Compl. ¶ 42. Approximately one week after the 90-day period ended, plaintiff's direct supervisor, Gregory Steele, allegedly informed him that his probationary period would last for 120 days instead. Compl. ¶ 44. Plaintiff contends that the 120-day probationary period was improper because it "was not agreed upon nor the norm." Compl. ¶ 44. This claim also invokes the CBA as the source of the right plaintiff is trying to vindicate because it is section 16.3 of the CBA that provides for the "agreed upon" 90-day term of probation after a promotion. *See* CBA § 16.3 ("If, within ninety (90) days of such promotion, an Employee fails to satisfy the Employer's requirements . . . such Employee may elect to be returned to his or her prior position in the bargaining unit."). Indeed, in his opposition memorandum, plaintiff acknowledges that the phrase "not agreed upon nor the norm" is a reference to the CBA's guidelines regarding probationary periods. *See* Pl.'s Opp. at 4. Since the discrimination claim in section B is founded upon rights created by the CBA's rules on probationary periods, it is also preempted under section 301. *See Heintzman v. Amalgamated Transit Union Int'l*, 825 F. Supp. 2d 161, 166–67 (D.D.C. 2011) (holding that the plaintiff's claims were preempted where the plaintiff was seeking to vindicate a right created by a contract that fell within the purview of section 301).

3. *Section C: "August 23, 2011 PARS"*

Section C describes plaintiff's receipt of four disciplinary Personnel Action Reports or "PARs" from his supervisor. Compl. ¶¶ 47–57. Plaintiff asserts that his supervisor recommended that he be dismissed based on the PARs despite the fact that "protocol for disciplinary progression consists of a verbal warning, a written warning, a suspension, and then

11

dismissal according to the collective bargaining agreement." Compl. ¶¶ 59–60. He further alleges that his supervisor's actions also violated the CBA's requirement that a PAR must be investigated. Compl. ¶ 62. These allegations point directly to the CBA as the source of the rights that plaintiff asks the court to recognize: sections 7.1 and 7.2 of the CBA respectively require Coastal to "attempt to conduct a confidential investigation of the circumstances of the event(s) giving rise to possible disciplinary action" and to employ a system of progressive discipline. CBA §§ 7.1–7.2. Therefore, these claims are also preempted.

    4. *Section D: "September 12, 2011 suspension"*

In section D, plaintiff states that on September 12, 2011, he received a three-day suspension based on his PARs. Compl. ¶¶ 66–67. Plaintiff does not specifically invoke the CBA in this section, but he does allege that defendant failed to follow the appropriate process because it did not investigate the PARs that gave rise to his suspension or provide him with an objective hearing on his appeal of the suspension notice. Compl. ¶ 70. As previously discussed, it is section 7.1 of the CBA that requires defendant to attempt to conduct a confidential investigation of events giving rise to disciplinary sanction. *See* CBA § 7.1. So plaintiff's contention that there should have been an investigation and a hearing arises out of the CBA, and resolving the question of whether the suspension was imposed improperly would involve consideration of the CBA. Therefore, an age discrimination claim based on the allegations in section D is also preempted by section 301.[5]

---

[5] Section E of the complaint alleges that plaintiff was suspended indefinitely without pay on June 29, 2012. *See* Compl. ¶ 74. Plaintiff has not alleged that the action was motivated by discrimination on the basis of his age. He alleges only that it was taken in retaliation for his opposition to the attempt to discharge him laid out in section C. Compl. ¶ 77. So section E has no bearing upon whether Count I is preempted.

12

Throughout the complaint, plaintiff attributes his non-selection for the shift supervisor position and his treatment at the hands of his supervisors to his age, but the gravamen of his complaint is that he did not receive promotions for which he was more qualified by virtue of his seniority, and that he was not accorded the disciplinary procedure that was "agreed upon." *See* Compl. ¶¶ 30–33. Since those claims are based upon rights created by the CBA, the age discrimination claim is preempted by section 301 and fails to state a claim under the DCHRA. The Court will therefore dismiss it under Rule 12(b)(6). *See Bush v. Clark Const. & Concrete Corp.*, 267 F. Supp. 2d 43, 46 (D.D.C. 2003) (dismissing the plaintiff's claim for failure to state a claim under D.C. statutory law for recovery of wages after finding that the plaintiff's claim was preempted by section 301).

## B. Plaintiff's retaliation claim is not preempted by section 301.

In Count II, plaintiff alleges that his supervisors placed him on indefinite suspension "for no reason other than in retaliation for Plaintiff's prior opposition to the attempt to remove him in 2011 for discriminatory reasons." Compl. ¶ 77. To establish a prima facie case of retaliation under the DCHRA, plaintiff must show that: "(1) he was engaged in a protected activity or that he opposed practices made unlawful by the DCHRA, (2) the employer took an adverse action against him, and (3) a causal connection existed between his opposition or protected activity and the adverse action taken against him." *Propp v. Counterpart Int'l*, 39 A.3d 856, 863 (D.C. 2012). Once a plaintiff has established a prima facie claim of retaliation, the burden then shifts to the defendant to demonstrate that it had a non-retaliatory reason for its action. *Id.* at 868.

Although plaintiff contends that he was retaliated against for exercising appeal rights accorded to him under the CBA, litigating the question of whether plaintiff has or has not made out the elements of a retaliation claim will not require the interpretation of the CBA. In

13

particular, determining whether plaintiff engaged in a protected activity when he filed his appeal, whether the indefinite suspension was an adverse action, or whether there was a causal connection between the his appeal of his recommended dismissal and his indefinite suspension will not require substantial analysis of the CBA. *See Lingle*, 486 U.S. at 407 (holding that the elements of a retaliatory discharge claim are "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer . . . . [and do not] require[] a court to interpret any term of a collective-bargaining agreement"). Additionally, plaintiff's right to be free from retaliation – unlike his rights to seniority, a 90-day probationary period after a promotion, and an investigation into the events giving rise to a disciplinary sanction – does not derive from the CBA.

Defendant maintains that the retaliation claim is preempted anyway because the CBA will come into play in connection with the defense. Coastal plans to offer legitimate non-retaliatory reasons for its actions that it says would directly implicate the CBA. Def.'s Reply to Pl.'s Opp. to Def.'s Mot. to Dismiss Compl. ("Def.'s Reply") [Dkt. # 5] at 5, citing *Reece v. Houst. Lighting & Power Co.*, 79 F.3d 485, 487 (5th Cir. 1996). In *Reece*, the Fifth Circuit explained that the employee's discrimination case turned on questions of promotion, seniority, and assignment to training programs, all of which were provided for in the CBA. 79 F.3d at 487. It added that the employer would "undoubtedly rely on the CBA as its legitimate, non-discriminatory reason" for its actions, and the employee's efforts to show that the employer's stated reason was pretextual would involve interpretation of the employer's rights under the

CBA. *Id.* The Court then held that the employee's claim was preempted under section 301 because the interpretation of the CBA was "made necessary by an employer defense." *Id.*[6]

Defendant submits that as in *Reece*, construction of the CBA will be "made necessary" by its defense, because to rebut plaintiff's claim, it will assert that it complied with the procedures set forth in the CBA. Def.'s Reply at 5. But whether defendant adhered to or varied from the CBA does not go to the question of whether the termination was motivated by retaliation or a legitimate reason, and proof that the defendant complied with its terms does not rebut the claim set forth in Count II. Unlike the situation in *Reece,* plaintiff's retaliation claim does not turn on questions of promotion, seniority, or other benefits provided for in the CBA. Plaintiff claims that his supervisors retaliated against him because he appealed their prior attempts to dismiss him, and plaintiff does not invoke the CBA as the source of the rights underlying the retaliation claim. Compl. ¶¶ 64, 77, 90. Since this claim is not based on defendant's failure to comply with the CBA, defendant's defense is a "purely factual inquiry [that] does not turn on the meaning of any provision of a collective-bargaining agreement." *See Lingle*, 486 U.S. at 407. Therefore, plaintiff's retaliation claim is not preempted by section 301.

---

6    Although the D.C. Circuit has not spoken on the issue, several other circuits have rejected this "defense preemption" theory. *See, e.g.*, *Watts v. United Parcel Serv., Inc.*, 701 F.3d 188, 193 (6th Cir. 2012); *Price v. Goals Coal Co.*, No. 97-1710, 1998 WL 536371, *8 (4th Cir. 1998); *Humphrey v. Sequentia, Inc.*, 58 F.3d 1238, 1244 (8th Cir. 1995); *Jarvis v. Nobel/Sysco Food Servs. Co.*, 985 F.2d 1419, 1427 (10th Cir. 1993).

## CONCLUSION

For the reasons stated above, the Court will grant defendant's motion to dismiss Count I because plaintiff's age discrimination claim is preempted under section 301, and it therefore fails to state a claim under the DCHRA. The Court will deny defendant's motion to dismiss Count II because plaintiff's retaliation claim is not preempted under section 301. A separate order will issue.

/s/ Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: September 11, 2013