# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____ ) | |
| THEODORE BERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-1420 (ABJ) |
| ) | |
| COASTAL INTERNATIONAL ) | |
| SECURITY, INC. ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM OPINION

Plaintiff Theodore Berry brought this employment discrimination action against defendant Coastal International Security, Inc. ("CIS"), alleging that defendant discriminated against him based on his national origin (African American) and his age, in violation of Title VII of the Civil Rights of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiff also claims that defendant retaliated against him in violation of the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2–1401.01 *et seq.*, Title VII, and the ADEA by suspending, transferring, and demoting him after he complained about the alleged discrimination. *See* 2d Am. Compl. [Dkt. # 58] ¶¶ 33–128. Defendant moved for summary judgment on the original complaint, and it supplemented its motion after the Court granted plaintiff's motion for leave to file a second amended complaint. Def.'s Mot. for Summ. J. ("Def.'s Mot.") [Dkt. # 38]; Def.'s Suppl. Mot. for Summ. J. [Dkt. # 61] ("Def.'s Suppl. Mot."); Def.'s Mem. of P. & A. in Supp. of Def.'s Suppl. Mot. [Dkt. # 61-1] ("Def.'s Suppl. Mem."). In response, plaintiff has attempted to show that CIS employed its disciplinary process unfairly. But the Court concludes that plaintiff has been unable to come forward with evidence to rebut the

defendant's legitimate non-discriminatory reasons for its employment decisions – that plaintiff repeatedly violated CIS's rules and procedures and acted unprofessionally. And with respect to retaliation, plaintiff cannot show the necessary causal connection between the filing of his original age discrimination complaint and his ultimate suspension, transfer, and demotion.

Throughout the pendency of this case, the Court has given plaintiff the benefit of every doubt and afforded him opportunities to add allegations to his complaint, to undertake long-overdue discovery even after the time for discovery had closed, and to supplement his opposition to the motion for summary judgment to bring it into compliance with the federal and local rules governing civil litigation. Plaintiff clearly feels aggrieved, and he has been emphatic in advancing his point of view that he was treated unfairly. But we are no longer at the pleading stage, and at this juncture, in the face of defendant's motion for summary judgment, the onus is on the plaintiff to point to proven fact – evidence in the record – that supports his claims. Notwithstanding the amount of time he has had to do that – including a considerable period of time when he was represented by counsel – he has failed to marshal the necessary evidence. For those reasons, the Court will grant defendant's motion.

## BACKGROUND

### I.      Procedural History

Plaintiff filed a complaint in Superior Court on July 13, 2012, alleging age discrimination and retaliation in violation of the District of Columbia Human Rights Act, D.C. Stat. § 14–201.11. Superior Ct. Compl. [Dkt. # 1-2]. Plaintiff was represented by counsel at that time. Defendant removed the action to this Court on August 27, 2012, and moved to dismiss the complaint on the grounds that plaintiff's employment with the defendant was covered by a collective bargaining agreement, and the claims were pre-empted by the Labor Management Relations Act, 29 U.S.C. § 185. *See* Notice of Removal [Dkt. # 1]; Def.'s Mot. to Dismiss [Dkt. # 2]. On September 11,

2013, the Court granted defendant's motion as to the age discrimination claim, finding that the claim was founded upon rights created by the agreement and therefore completely pre-empted. *See* Order (Sept. 11, 2013) [Dkt. # 6]; Mem. Op. (Sept. 11, 2013) [Dkt. # 7].  But the Court denied the motion to dismiss the retaliation claim because it found that the rights plaintiff sought to vindicate in that count were independent of the collective bargaining agreement.  *See id.*

When the Court asked the parties to address whether it should continue to exercise jurisdiction over the remaining state law count, plaintiff advised the Court that he intended to amend the complaint to add federal claims, and the Court gave plaintiff until October 24, 2013 to file a motion for leave to amend.  *See* Min. Order (Oct. 10, 2013).

But before that motion was filed, the parties agreed to stay the case while plaintiff awaited receipt of a Notice to Sue letter from the EEOC.  Pl.'s Mot. to Stay [Dkt. # 12].  When the stay was lifted, plaintiff filed an amended complaint with defendant's consent.  *See* Min. Order (Nov. 20, 2013); Am. Compl. [Dkt. # 16].  The Amended Complaint asserted retaliation claims under the DCHRA, and added claims of age and national origin discrimination under Title VII and the ADEA.  Am. Compl. ¶¶ 88–113.  Defendant answered that complaint, and after an initial scheduling conference was held on February 3, 2014, the case moved into the discovery phase. Answer [Dkt. # 17].[1]

In July of 2014, plaintiff's attorney moved to withdraw.  Mot. to Withdraw/Strike Appearance [Dkt. # 30].  The Court then granted plaintiff, proceeding *pro se*, two extensions to complete discovery.  Min. Order (Aug. 14, 2014); Min. Order (Dec. 24, 2014).

---

[1]    Plaintiff filed a motion for leave to file a Second Amended Complaint on April 29, 2014, *See* Mot. to File 2d Am. Compl. [Dkt. # 22], but he later withdrew the motion.  Withdrawal of Pl.'s Mot. for Leave to File 2d Am. Compl. [Dkt. # 28].

During discovery, after the Court resolved a discovery dispute, *see* Min. Order (Nov. 14, 2014), plaintiff moved for reconsideration of the Court's ruling. Mot. for Recons. [Dkt. # 35]. As part of that motion, plaintiff alerted the Court to a "new development" in the case: the D.C. Office of Human Rights had recently dismissed plaintiff's second EEO complaint. *Id.* at 1. The Court denied plaintiff's motion for reconsideration, but noted that "in light of all the circumstances," plaintiff would be permitted to file a motion for leave to amend his complaint. Order (Jan. 5, 2015) [Dkt. # 41].

In the interim, defendant filed its motion for summary judgment on the pending claims, Def.'s Mot., and defendant, still *pro se*, responded on January 28, 2015. Pl.'s Resp. in Opp. to Def.'s Mot. [Dkt. # 43]. Plaintiff also filed a motion for leave to amend the complaint, and, in light of that motion, the Court stayed the remaining briefing deadlines. Pl.'s Mot. for Leave to File Am. Compl. [Dkt. # 42]; Min. Order (Feb. 9, 2015).

On June 3, 2015, plaintiff secured new counsel who remained in the case thereafter. Notice of Appearance [Dkt. # 46]. On July 24, 2015, the Court granted in part and denied in part the motion for leave to amend, permitting the plaintiff to add certain allegations but not others. *See* Mem. Op. & Order (July 24, 2015) [Dkt. # 49]. Plaintiff was authorized to undertake discovery on the new claims, and he was directed to file a revised version of the second amended complaint that comported with the Memorandum Opinion and Order. *Id; see also* Order (Aug. 17, 2015) [Dkt. # 53]; Min. Order (Oct. 22, 2015) (granting in part and denying in part plaintiff's Motion for Extension of Time To Complete Discovery); and Min. Order (Oct. 29, 2015) (granting plaintiff's Motion for Leave to File Deposition Notices).

After several unsuccessful efforts, plaintiff eventually filed a Second Amended Complaint that conformed to the Court's Order. 2d Am. Compl. [Dkt. # 58].[2]  The complaint includes six counts:  the age discrimination count that was previously dismissed (Count I); retaliation in violation of the DCHRA (Count II); national origin discrimination in violation of Title VII (Count III); retaliation in violation of the ADA (Count IV); age discrimination in violation of the ADEA (Count V); and retaliation in violation of Title VII.  2d Am. Compl. ¶¶ 94–128.  After discovery was finally complete, the Court established a schedule resuming the briefing on defendant's originally filed motion for summary judgment, as well as its supplemental motion seeking judgment on the new claims, which had been filed on October 16, 2015.  The Court specifically directed the parties' attention to Local Civil Rule 7(h)(1) and the scheduling order in the case which detailed the requirements for an opposition to a motion for summary judgment.  *See* Min. Order (Oct. 29, 2015), citing Scheduling Order (Feb. 3, 2014) [Dkt. # 21].

On December 18, 2015, the day when plaintiff's combined opposition to the motions was due, plaintiff filed nothing more than a motion to strike the declaration of plaintiff's attorney, Ms. Henninger.  *See* Pl.'s Mot. to Strike [Dkt. # 64].  The Court denied the motion and reminded the plaintiff that he had yet to oppose defendant's supplemental motion or to comply with Local Rule 7(h)(1) in connection with either of defendant's motions. It warned:

> If plaintiff fails to oppose the supplemental motion, the Court will treat the motion as conceded.  *See* LCvR 7(b).  If plaintiff fails to file a statement of material facts in accord with Local Civil Rule 7(h)(1), the Court will treat

---

2       On August 7, 2015, plaintiff docketed a Second Amended Complaint that made extensive changes beyond those specified in the Court's July 2014 Order granting leave to amend.  *See* 2d Am. Compl. [Dkt. # 51].  Plaintiff then moved to withdraw the Second Amended Complaint and attached another version of the complaint, but that draft also failed to comply with the Court's Order.  *See* Mot. to Withdraw 2d Am. Compl. [Dkt. # 54].  The Court struck the Second Amended Complaint and again reiterated that a properly-filed Second Amended Complaint could add only the two claims identified in the Court's July 24 Order.  Order (Aug. 27, 2015) [Dkt. # 57].

> the facts in defendant's motions as admitted.  *See* LCvR 7(h)(1).  In an
> exercise of the Court's discretion, it is hereby ORDERED that any statement
> of genuine issues of fact pursuant to Local Rule 7(h)(1) and any opposition
> to defendant's supplemental motion for summary judgment (which may be
> consolidated with an opposition to the original summary judgment motion)
> must be filed no later than January 8, 2016.

Min. Order (Dec. 21, 2015).

Plaintiff filed his opposition to defendant's motion on December 21, 2015 which included a factual recitation entitled "Summary of Undisputed Facts," but lacked any statement identifying genuine issues of material fact pursuant to Local Rule 7(h).  Pl.'s Opp. to Def.'s Mot. for Summ. J. [Dkt. # 65] ("Pl.'s Opp."); Pl.'s Summary of Undisputed Facts [Dkt. # 65] ("Pl.'s SOF").  What was appended to the opposition was plaintiff's declaration, which appeared to be just a draft and contained few, if any, citations to record evidence.  *See* Decl. of Theodore W. Berry [Dkt. # 65-1].  The Statement of Undisputed Facts was also largely devoid of citations to materials in the record.  Plaintiff filed no excerpts of depositions or exhibits with his pleading, and the Court ordered him to file a final version of the declaration as well as any record materials upon which he intended to rely, by January 11.  *See* Min. Order (Jan. 6, 2016).

On January 11, 2016, plaintiff filed two more pleadings:  another version of his opposition to plaintiff's first motion for summary judgment, *See* Pl.'s Opp. to Def.'s Suppl. Mot. [Dkt. # 67] ("Pl.'s 2d Opp."); and an opposition to the supplemental motion.  Pl.'s Opp. to Def.'s Suppl. Mot. [Dkt. 68-10] ("Pl.'s 3d Opp.").  Those pleadings again included plaintiff's own recitations of the facts, *see* Pl.'s Statement of Genuine Issues of Fact in Supp. of His Opp. to Def.'s Mot. [Dkt. # 67-7] ("Pl.'s 2d SOF"); Pl.'s Statement of Genuine Facts in Opp. to Def.'s Suppl. Mot. [Dkt. # 68] ("Pl.'s Supp. SOF"), but they lacked the statement responsive to the defendant's Statement of Facts required by the Local Rules.  Plaintiff also failed to replace the draft declaration as the Court had

ordered.[3]  Pl.'s 2d SOF; Pl.'s Statement of Genuine Facts in Opp. to Def.'s Suppl. Mot. [Dkt. # 68]

("Pl.'s 3d SOF").

Defendant filed a reply in support of its motion on January 19, 2016.  Def.'s Reply Mem.

in Further Supp. of Def.'s. Mot. [Dkt. 69] ("Def.'s Reply").[4]

## II.    Factual Background

In the absence of a statement by plaintiff "setting forth all material facts as to which it is

contended there exists a genuine issue necessary to be litigated," Local Civil Rule 7(h)(1),  and

pursuant to Fed. R. Civ. P. 56(c) ("[a] party asserting that a fact cannot be or is genuinely disputed

must support the assertion by . . . citing to particular parts of materials in the record . . . ."), the

Court relies primarily on defendant's statement of undisputed facts.   Plaintiff's allegations to the

contrary will also be set forth where relevant.

---

3      Even if plaintiff had properly re-filed his declaration, it would have had limited utility at
this stage of the proceedings.  *See Gen. Elec. Co. v. Jackson*, 595 F. Supp. 2d 8, 36 (D.D.C. 2009)
(stating that when a "declaration is self-serving and uncorroborated" it is "of little value at the
summary judgment stage"); *Fields v. Office of Johnson*, 520 F. Supp. 2d 101, 105 (D.D.C. 2007)
("Self-serving testimony does not create genuine issues of material fact, especially where that very
testimony suggests that corroborating evidence should be readily available.").

4      In its reply to plaintiff's opposition to the motion for summary judgment, defendant asked
that plaintiff's various statements of fact be stricken.  Def.'s Reply at 3–4.  No formal motion to
strike was filed, though, and the Court has taken pains to ensure that its ruling is based on a
consideration of the entire record.  So even though defendant has voiced legitimate concerns about
plaintiff's compliance with the rules and the Court's orders, nothing has been stricken from the
record.  Also, the Court notes that at one point in one of its orders reminding plaintiff of his
obligations under Rule 56 and Local Civil Rule 7(h), *see* Scheduling Order (Feb. 3, 2014); and
Min. Order (Oct. 29, 2015), it incorrectly referred to plaintiff's obligation to file a separate
"statement of *un*disputed material facts."  *See* Min. Order (Dec. 21, 2015) (which also correctly
ordered plaintiff to file "any statement of genuine issues of fact pursuant to Local Rule 7(h)(1)"
by a certain date).   In the event plaintiff understood that isolated error to have solicited his
recitations of the facts, they will not be stricken.  But in the absence of citations to the record, they
do not supply the proof needed at the summary judgment stage.  *See* Fed. R. Civ. P. 56(c)(1); *Bank
of N.Y. Mellon Trust Co., N.A. v. Henderson*, 107 F. Supp. 3d 41, 45 (D.D.C. 2015) (the Court
need not rely on "factual assertions that are not supported with citations to the record, and does
not scour the record for evidence that will support a party's claims.").

Plaintiff was born in 1951, and he identifies his national origin as "American." Pl.'s Dep., Ex. A. to Decl. of S. Libby Henninger [Dkt. # 38-4] ("Pl.'s Dep.") at 28. He was hired as a security officer at CIS in 1998. *Id.* at 33–34, 36. CIS is a private security company that contracts with various federal government agencies, and it provides armed security services at the Ronald Reagan Building and International Trade Center ("RRB"). Def.'s Statement of Undisputed Facts in Supp. of Def.'s Mot. [Dkt. # 61–2] ("Def.'s SOF") ¶ 1.

Security officers working for CIS at the RRB belong to a union, and the terms and conditions of their employment are governed by a collective bargaining agreement ("CBA"). Pl.'s Dep. at 36–38; Ex. B to Henninger Decl. [Dkt. # 38-4] (attaching relevant portions of the CBA). The CBA includes a provision detailing a system of progressive discipline for misconduct by security officers, but it also provides that CIS reserves the right to skip any step of the progressive discipline process, depending on the severity of the misconduct. Ex. B to Henninger Decl. at § 7.1–7.5.

## A.   Plaintiff's protected activity

Around January 26, 2011, plaintiff submitted a complaint to Regional Manager Frank Duran related to a prior disciplinary action he had received from another manager. Pl.'s Dep. at 72–76; Ex. D to Henninger Decl. [Dkt. # 38-4] (complaint). That complaint made reference to concerns of "nepotism and cronyism" with regards to the selection and use of interim shift supervisors on the USAID contract. Ex. D to Henninger Decl.

## B.   Plaintiff applies for a supervisory position

In 2010, CIS advertised for a shift supervisor position at the RRB. Decl. of Janet Gunn [Dkt. # 38-3] ¶ 6. Plaintiff applied for the shift supervisor position in January 2011. *Id.* Sergeant Johnny Dankwah, who is from Ghana, and one other individual also applied for the position. Def.'s SOF ¶ 10; 2d Am. Compl. ¶ 82.

While CIS reviewed the applications for that opening, several employees, including plaintiff, assumed the role of acting shift supervisor.  Gunn Decl. ¶ 7.  Around March 21, 2011, CIS selected Sgt. Dankwah to fill the position.  Gunn Decl. ¶ 8; Pl.'s Dep. at 77–78.  CIS explained to plaintiff that he was not chosen because of his overall job performance, which included recent complaints by other supervisors about his attitude.  Gunn Decl. ¶ 8; Ex. C to Gunn Decl. [Dkt. # 38-3].  Plaintiff's uniform presentation was also deemed to be below standard.  Ex. C to Gunn Decl.

Shortly after plaintiff learned that he had not been selected, he appealed to Regional Manager Duran and argued that he should have been given the position based upon his seniority and experience.  Ex. C to Henninger Decl. [Dkt. # 38-4].  Duran agreed, awarded plaintiff the shift supervisor position, and placed him on a 90-day term of probation; if plaintiff successfully completed the probationary period, he would be promoted to Lieutenant Major.  *Id.*

After the probationary period concluded, on November 21, 2011, plaintiff filed a charge of age discrimination and retaliation related in part to the January 2011 promotional opportunity.  Pl.'s Dep. at 183–85; Ex. U to Henninger Decl. [Dkt. # 38-4].[5]

### C.    Plaintiff is disciplined for failing to properly fill out certain forms

All officers at the RRB are required to record their time daily on a "139 form."  Pl.'s Dep. at 85–86.  Officers also use a "1051 form" to record the identification numbers for weapons and equipment checked in and out during a shift.  Pl.'s Dep. at 86–88; Gunn Decl. ¶ 10.  Shift supervisors are responsible for ensuring that both forms are accurately completed.  Pl.'s Dep. at 85–88; Gunn Decl. ¶ 10.   The government routinely audits CIS's compliance with those

---

5    Plaintiff asserts that he was passed over for the promotion because of his age, and in support of that claim, he alleges that Project Manager Steele referred to him as "grandpa type."  Pl.'s SOF ¶ 11.  He provides no citation or evidentiary support for this allegation, and without further support, the statement is inadmissible hearsay.

contractual requirements, and it has the power to fine CIS if the forms are not completed properly. Pl.'s Dep. at 88–89; Gunn Decl. ¶ 11.

On August 23, 2011, plaintiff was issued two disciplinary warnings – known as personnel action reports or PARs – for failing to accurately complete forms 139 and 1051.[6] Exs. G, H to Henninger Decl. [Dkt. # 38-4].  Several days later, a government contract manager also informed CIS that he had found errors on plaintiff's 1051 forms.  Ex. J to Henninger Decl. [Dkt. # 38-4]. Plaintiff was not the only one disciplined for failing to properly complete these forms:  Sgt. Dankwah, for example, was also issued PARs for trouble with the same forms.  Ex. D to Gunn Decl. [Dkt. # 38-3].[7]  Plaintiff was issued another PAR on February 27, 2012 for improperly editing a 139 form which an officer had already signed.  Ex. O to Henninger Decl. [Dkt. # 38-4].

### D.    Plaintiff is disciplined for changing the schedule without authorization

On April 19, 2011, CIS issued a memorandum to all shift supervisors, including plaintiff, directing that:  "[o]nly Project Managers shall approve all leave requests.  Under NO circumstance will a shift supervisor approve any officer's leave."  Ex. E to Henninger Decl. [Dkt. # 38-4].  That instruction notwithstanding, plaintiff was issued another PAR on August 23, 2011 for removing

---

6      Plaintiff alleges that Steele gave him six PARs that day, not two, but when plaintiff challenged Steele that the PARs were "bogus," Steele "tore those two PAR[s] on the spot."  Pl.'s SOF ¶ 15.  In plaintiff's second opposition, he references four PARs on August 23, 2011.  *See* Pl.'s 2d Opp. at 18.  The record reflects three PARs on August 23, 2011 – two related to the forms, and one related to the schedule, discussed below.  *See* Exs. G, H, I to Henninger Decl. [Dkt. # 38-4]. Again, plaintiff does not cite any evidence to support his version of events.

7      Plaintiff points out – without citation – that PARs were generally not the remedy for failing to fill out the appropriate paperwork, but he does not dispute that other officers also received PARs for the same conduct.  Pl.'s SOF ¶¶ 17–20; Pl.'s 2d SOF ¶¶ 17–20.  He points out that there is no evidence in the record to show that he was ever trained on how to properly complete those forms. Pl.'s 2d Opp. at 19, 20.  And he submits that "[o]n numerous occasions[,] similar issues arose without a PAR being issued against the offender."  *Id.*  The Court cannot consider those statements – which lack evidentiary support – in resolving defendant's motion for summary judgment.

an officer from a schedule without getting the project manager's approval.  Ex. I to Henninger Decl. [Dkt. # 38-4].

On February 10, 2012, plaintiff received another PAR for granting an officer leave without approval, and for reassigning hours on the schedule without approval.  Ex. N to Henninger Decl. [Dkt. # 38-4]; Pl.'s Dep. at 122.  On March 20, 2012, CIS issued another memorandum to plaintiff to reiterate that he was not to make changes to the schedule without the project manager's consent.  Ex. P to Henninger Decl. [Dkt. # 38-4]; Pl.'s Dep. at 124–25.

### E.   Verbal altercation with coworker

On September 4, 2011, CIS received a complaint regarding plaintiff's conduct towards another supervisor, Sergeant Donna Dade.  Ex. E to Gunn Decl. [Dkt. # 38-3].  According to Dade, there was an incident when plaintiff was trying to reach her, and she did not respond for approximately 15 minutes.  *Id.* at 30.[8]  When she arrived at plaintiff's office, he approached her, and, in an "agitated tone," asked her for her weapon number so that he could confirm that her weapon number matched the one listed on the 1051 form.  *Id.*  Dade reported that when she suggested that plaintiff could simply look at the form on file, he became "disgruntle[d] and jump[ed] out of his seat" and started "hollering" at her.  *Id.*  When Dade tried to remove herself from the situation, plaintiff allegedly "chased" her out of his office.  As a result, Dade reported that she did not "feel safe or comfortable being at work with" plaintiff, and that she "actually fear[ed] for her life" because of his "rage."  *Id.* at 31.

---

8      The exhibits to the Gunn Declaration are attached as one large document.  The citation to the page number refers to the page number auto-generated by ECF.

CIS investigated Dade's complaint, and interviewed the witnesses involved.  *See generally*
Ex. E to Gunn. Decl. [Dkt. # 38-3].  Based on that investigation, plaintiff was issued a PAR and
suspended for three days.  *Id.* at 19–20.[9]

### F.    Plaintiff's superiors attempt to remedy plaintiff's conduct

When plaintiff returned from his suspension, he met with the contract manager and his
union representative.  Ex. K to Henninger Decl. [Dkt. # 38-4].  At that meeting, the contract
manager reiterated that plaintiff was required to act appropriately and professionally at all times.
*Id.*  But despite those warnings, plaintiff's unprofessional conduct continued.  On June 26, 2012,
plaintiff was issued a PAR after he refused to issue a counseling notice to another officer – Officer
Van Smith – after he was directed to do so by the on-duty Operations Manager.  Ex. Q to Henninger
Decl. [Dkt. # 38-4]; Pl.'s Dep. at 125–28.  Plaintiff had previously served as best man at Officer
Smith's wedding.  Pl.'s Dep. at 128.

### G.    Plaintiff's subordinate requests an emergency bathroom break

On June 26, 2012, a female officer, Officer Bendoria Causey, contacted plaintiff to ask to
be relieved from her post for an emergency bathroom break.  Pl.'s Dep. at 129–31; Ex. F to Gunn
Decl. [Dkt. # 38-3].  On his way to provide the requested relief, plaintiff was informed that an
alarm in the building had been triggered.  Pl.'s Dep. at 131–32; Ex. F to Gunn Decl.  Instead of
dealing with the emergency bathroom break request first, plaintiff decided to respond to the alarm.
Pl.'s Dep. at 130–32; Ex. F to Gunn Decl.  While on his way, plaintiff had to walk past Officer
Causey, who emphasized the emergency nature of her request.  Pl.'s Dep. at 130–31; Ex. F to

---

9      Plaintiff claims – without citation and in the face of the evidence to the contrary – that there
was no investigation into the September 4, 2011 incident with Officer Dade.  Pl.'s SOF ¶ 24; Pl.'s
2d SOF ¶ 22.

Gunn Decl.  Plaintiff did not obtain other coverage for the officer, and he dealt with the alarm issue before returning to relieve her.  Pl.'s Dep. at 130–31; Ex. F to Gunn Decl.

In the interim, Officer Causey soiled herself.  Pl.'s Dep.  at 132; Ex. F to Gunn Decl.[10]  CIS found plaintiff to be at fault for this incident, and suspended him on June 28, 2012 pending further investigation.  Ex. F to Gunn Decl.  Ultimately, as a result of the investigation, CIS determined that it had "lost confidence in the [plaintiff's] ability to perform the duties and functions of a Lieutenant and to ensure compliance with all company policies and procedures."  Ex. S to Henninger Decl. [Dkt. # 38-4].  Plaintiff was demoted from Lieutenant to Security Officer and transferred from the USAID contract to a GSA contract, also at the RRB.  *Id.*; Gunn Decl. ¶ 15. Plaintiff was also given a final warning.  Gunn Decl. ¶ 15.  As a result of the demotion and suspension, supervisors at the RRB were all moved up one position in the chain of command, and Sgt. Dankwah assumed plaintiff's former position.  Ex. T to Henninger Decl. [Dkt. # 38-4] at 131.

On September 10, 2012, plaintiff met with the contract manager, Nkrumah Williams[11], and Regional Manager Frank Duran, to discuss the final warning, and plaintiff's return to work.  Ex. S to Henninger Decl.; Gunn Decl. ¶ 16.  Plaintiff initially refused to accept the final warning and return to work, but he ultimately returned on September 18, 2012.  Ex. G to Gunn Decl. [Dkt. # 38-3]; Gunn Decl. ¶ 16.

On November 12, 2012, plaintiff filed a second charge of discrimination, claiming that he was subjected to age discrimination, national origin discrimination, and retaliation when he was

---

10    Plaintiff now argues that the "staff member was not harmed by [p]laintiff's decision to respond to the 'duress alarm' rather than to attend to her bathroom needs."  Pl.'s SOF ¶ 31.

11    Williams is of Ghanaian descent. Am. Compl. ¶ 83.

suspended in connection with the bathroom incident.  Pl.'s Dep. at 185–86; Ex. V to Henninger

Decl. [Dkt. # 38-4].

### H.   Plaintiff fails to recognize a cleared badge for entry into the building

On May 22, 2013, a tenant of the RRB lodged a complaint with CIS alleging that plaintiff

failed to recognize the resident's badge.  Ex. H to Suppl. Decl. of Janet Gunn [Dkt. # 61-3].

Plaintiff's actions delayed the resident and his wife from entering the building, which resulted in

the resident being late for his wife's birthday dinner.  Suppl. Decl. of Janet Gunn [Dkt. # 61-3] ¶ 3;

Ex. H to Gunn Suppl. Decl.  Though plaintiff was directed to apologize to the tenant, he apologized

only for delaying the tenant and refused to admit that he had erred in failing to recognize the badge

that authorized the tenant to enter the building.  Ex. I to Suppl. Gunn Decl. [Dkt. # 61-3].

### I.   The key incident and failure to complete firearms training

On May 28, 2013, Lieutenant James Johnson failed to return a call box key to the Base

Command Center, and instead, took the key home at the end of his shift.  Def.'s SOF ¶ 42.  Lt.

Johnson was directed to return the key the next day, but he gave the key to plaintiff to return

instead.  *Id.*  Plaintiff failed to do so and, against CIS's policies, took the key home.  *Id.*  Like

Johnson, plaintiff was directed to return the key the following day, but then he also failed to do so.

*Id.*  The key was not returned to the Base Command Center until May 31, 2013.  *Id.*; Ex. J to Gunn

Suppl. Decl. [Dkt. # 61-3].[12]

On June 3, 2013, plaintiff received a PAR for his failure to return the key.  Ex. K to Gunn

Suppl. Decl. [Dkt. # 61-3].  Because he was already on a final written warning, the PAR was

---

12     Plaintiff included 10 photographs of the key in question as exhibits to his various
oppositions.  *See* Exs. 11, 30, 31 to Pl.'s 2d Opp. [Dkt. # 67-2, 67-8]; Exs. 11, 30, 31 to Pl.'s 3d
Opp. [Dkt. # 68-2, 68-7].  The photos are clearly irrelevant to the question of whether defendant
discriminated or retaliated against plaintiff.

deferred for investigation.  *Id.*[13]  Plaintiff was suspended pending investigation of the key incident on June 19, 2013.  Ex. N to Gunn Suppl. Decl. [Dkt. # 61-3].

Also in June 2013, plaintiff failed to successfully complete firearms testing.  Def.'s SOF ¶ 48.  On June 28, 2013, while plaintiff was already suspended for the key incident, he was notified that he was being placed on unpaid administrative leave – for up to thirty days – during which he was obligated to complete the firearms exam.  Ex. O to Gunn Suppl. Decl. [Dkt. # 61-3].  Plaintiff completed the training on July 23, 2013.  Gunn Suppl. Decl. ¶ 12.

On August 9, 2013, based on the combination of plaintiff's failure to apologize properly to a tenant of the RRB, his violation of CIS's key policy, "insubordinate delay" in returning the key, and neglect of duties, plaintiff was issued another Final Warning and suspended for twenty days.  Ex. P to Gunn Suppl. Decl. [Dkt. # 61-3].  This suspension was scheduled to run concurrently to the administrative leave related to his failure to pass the firearms examination.

In December 2013, plaintiff filed another EEOC charge alleging that the suspension over the key incident was retaliatory and discriminatory.  *See* Ex. 3 to Pl.'s Reply to Def.'s Opp. to Pl.'s Am. Compl. [Dkt. # 48-1] at 1.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

13   Lt. Johnson was also given a PAR for his conduct during this episode.  But because he – unlike plaintiff – had no active discipline, he was given a verbal warning.  Ex. L to Gunn Suppl. Decl. [Dkt. # 61-3].

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## ANALYSIS

Plaintiff claims that the succession of PARs, as well as his 2012 demotion and transfer to a different contract within the RRB after the bathroom incident, and his numerous suspensions, constitute discrimination on the basis of his age and national origin, and retaliation for his protected activity of complaints surrounding his promotion.  But because defendant has come forward with evidence to show that plaintiff was disciplined because of his poor job performance, and not for a discriminatory or retaliatory purpose, and plaintiff has failed to come forward with evidence to show that defendant's stated reasons were either pretextual or tainted by improper animus, the Court will grant defendant's motion for summary judgment.

Title VII of the Civil Rights Act of 1964 was enacted to implement "the federal policy of prohibiting wrongful discrimination in the Nation's workplaces."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2522 (2013).  The anti-discrimination provision "makes it unlawful for

an employer 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race'" or other protected characteristics. *Steele v. Schafer*, 535 F.3d 689, 695 (D.C. Cir. 2008), quoting 42 U.S.C. § 2000e-2(a). As the D.C. Circuit has explained, to state a *prima facie* case of disparate treatment under Title VII's antidiscrimination provision, the plaintiff must establish two essential elements: "that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008), citing 42 U.S.C. § 2000e-16(a); *see also* 29 U.S.C. § 633a(a) (providing that, pursuant to the ADEA, "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in executive agencies . . . shall be made free from any discrimination based on age.").

Ordinarily when a plaintiff brings a disparate treatment claim under the anti-discrimination provision of either Title VII or the ADEA, and he relies on circumstantial evidence to establish the employer's unlawful conduct, the Court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006). Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case. *McDonnell Douglas*, 411 U.S. at 802; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).[14] Once a *prima facie* case is established, then "[t]he burden . . . must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas*, 411 U.S. at 804; *Holcomb*, 433 F.3d at 896–97. If a legitimate,

---

14    To establish a prima facie case of disparate treatment discrimination, "the plaintiff must establish that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination." *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002).

nondiscriminatory reason is given, the burden shifts back to the plaintiff to prove that the proffered reason is a pretext for discrimination or retaliation. *McDonnell Douglas*, 411 U.S. at 803; *Holcomb*, 433 F.3d at 896.

But in cases like this one where the defendant proffers legitimate, nondiscriminatory or nonretaliatory reasons for the challenged actions, the court need not conduct the threshold inquiry into whether the plaintiff established a *prima facie* case of discrimination. Instead, the court is required to analyze whether the defendant's asserted reason is in fact a legitimate, nondiscriminatory explanation. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493–94 (D.C. Cir. 2008) ("Lest there be any lingering uncertainty, we state the rule clearly: In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not – *and should not* – decide whether the plaintiff actually made out a *prima facie* case under *McDonnell Douglas*.").

Once the defendant has proffered a legitimate explanation, then the burdens shifts to the plaintiff to demonstrate why the defendant is not entitled to judgment as a matter of law. In the context of a disparate treatment claim, the plaintiff may defeat summary judgment by proving either that the defendant's legitimate, nondiscriminatory reason is a pretext for discrimination, *McDonnell Douglas*, 411 U.S. at 804, or that the employment action was motivated by discrimination in addition to the proffered legitimate reason. *Nassar*, 133 S. Ct. at 2522–23; *Fogg v. Gonzales*, 492 F.3d 447, 451 (D.C. Cir. 2007); *see also Ginger v. District of Columbia*, 527 F.3d 1340, 1345 (D.C. Cir. 2008) (explaining the difference between a "single motive" and a "mixed-motive" disparate treatment case). Plaintiff at all times bears the burden of persuasion. *McIntyre v. Peters*, 460 F. Supp. 2d 125, 132–33 (D.D.C. 2006).

I.     **Plaintiff's ADEA and national origin claims fail because defendant has shown legitimate and nondiscriminatory reasons for its employment actions.**

In Count III, plaintiff claims that CIS discriminated against him based on his national origin as a natural born American when it made the decision in 2012 to demote and transfer him to a different contract at the RRB, and replaced him with Johnny Dankwah, an employee of Ghanaian descent.  2d Am. Compl. ¶¶ 100–05.  Plaintiff also contends that the act of suspending him for taking the alarm key home constituted national origin discrimination because "similarly situated Ghanaian employees were not disciplined in a similar manner."  *Id.* ¶ 107.

In Count V, plaintiff alleges that he was discriminated against based on his age when CIS suspended, demoted, and transferred him, and replaced him with Johnny Dankwah, who is "in his thirties and substantially younger than [p]laintiff."  *Id.* ¶¶ 116–22.

In response to plaintiff's claims of discrimination, defendant contends that plaintiff was justifiably suspended in 2012 due to his "difficulties adhering to Coastal's policies and procedures," and because of his "egregious and unprofessional conduct" during the verbal altercation with Dade and the emergency bathroom break incident.  Def.'s Suppl. Mem. at 17.  Defendant adds that plaintiff was demoted due to his "ongoing failure to comply with workplace rules and procedures."  *Id.*

According to the defendant, plaintiff's 2013 suspension was also justified in light of plaintiff's violations of the collective bargaining agreement, his violation of work rules "by removing a key from his workplace and refusing to return it" even after he was ordered to do so, and his failure "to understand security protocols related to clearing residents entry into the building."  Def.'s Suppl. Mem. at 18.  Defendant also points out that the suspension ran concurrently to the administrative leave without pay imposed for failure to complete required firearms testing.  *Id.*

Defendant's legitimate and non-discriminatory reasons – plaintiff's unprofessional conduct and difficulty adhering to CIS's policies – are well supported by the record.  *See* Exs. G, H, J, O to Henninger Decl.  (difficulty adhering to policies surrounding forms 139 and 1051); Exs. E, I, N, P to Henninger Decl. (difficulty adhering to policy that only the project manager may change a schedule); Ex. E to Gunn Decl. (unprofessional verbal altercation with coworker); Ex. Q to Henninger Decl. (refusal to discipline a friend despite being ordered to do so); Ex. F to Gunn Decl.; Ex. S to Henninger Decl. (refusal to appropriately respond to Officer Causey's request for an emergency bathroom break); Def.'s SOF ¶ 42 (failure to return a key as directed); Exs. H, I to Gunn Suppl. Decl. (failure to recognize a cleared badge and failure to adequately apologize); Ex. O to Gunn Suppl. Decl. (failure to timely complete firearms training).  Even if one could raise questions about the gravity of any particular infraction or incident when viewed in isolation, defendant has identified legitimate, nondiscriminatory grounds for its decision to suspend, demote, and transfer the plaintiff by putting forth evidence of an accumulation of events that prompted repeated warnings.  *See Holcomb*, 433 F.3d at 896; *Onyewuchi v. Mayorkas*, 766 F. Supp. 2d 115, 121 (D.D.C. 2011).

So the burden shifts back to the plaintiff to "show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason."  *Holcomb*, 433 F.3d at 896–97, quoting *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003); *see also Porter v. Shah*, 606 F.3d 809, 815 (D.C. Cir. 2010).  "All of the evidence" includes

> any combination of (1) evidence establishing the plaintiff's prima facie case; (2) evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff, such as independent evidence of discriminatory statements or attitudes on the part of the employer.

*Holcomb*, 433 F.3d at 897.  Because plaintiff has failed to put forth any evidence in either the first

or third categories, and he relies solely on his own disagreement with the manner in which his

employer exercised its judgment for the second category, his attempt to carry his burden fails.

Plaintiff argues that the PARs that form the basis for defendant's asserted non-

discriminatory reasons are all pretextual because it "is clear [d]efendant has used the disciplinary

system as a ready vehicle for discrimination and or reprisal."  Pl.'s 2d Opp. at 26.  Plaintiff then

makes the argument that the procedures used by CIS in disciplining him were improper, because

CIS allegedly never formally investigated the allegations that formed the basis for those PARs,

and that certain aspects of the 90-day suspension violated the CBA.  *Id.* at 26–27, 30.  Even if

plaintiff's unsupported accusations were true,[15] he would still not be able to defeat summary

judgment.

The D.C. Circuit has explained that an agency's failure to follow its own personnel

procedures may be probative evidence of pretext.  *Johnson v. Lehman*, 679 F.2d 918, 922 (D.C.

Cir. 1982).  But because the Court does not "serve as a 'super-personnel department that

reexamines an entity's business decisions,'" *Holcomb*, 433 F.3d at 897, quoting *Barbour v.

Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999), even a procedurally-flawed decision to discipline

an employee is not evidence of pretext if "the employer honestly believes in the reasons it offers."

*Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996).  Instead, a procedural

defect must evidence the employer's discriminatory bias.  *Washington v. Chao*, 577 F. Supp. 2d

_____

15      Plaintiff cites to a letter by Hal Vo, plaintiff's former coworker, who alleges that Officer
Causey intentionally attempted to get plaintiff "in trouble."  Ex. 28 to Pl.'s Opp. [Dkt. # 67–8].
Plaintiff also included an email from another coworker, Ronnie Hogue, who alleges that the key
incident and the incident with the resident's badge evidences a "conspiracy and assassination" of
plaintiff's "job status and character."  Ex. 38 to Pl.'s 3d Opp. [Dkt. # 68-9].  Both letters are "sheer
hearsay" which "count[] for nothing" on summary judgment.  *Gleklen v. Democratic Cong.
Campaign Comm., Inc.*, 199 F.3d 1365, 1369 (D.C. Cir. 2000).

27, 46 (D.D.C. 2008), citing *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1228–29 (D.C. Cir. 2008).

Plaintiff attempts to meet this burden in two ways.  First, he argues, without citation, that the discipline he received for changing other officers' schedules without approval was a pretext for discrimination, because he was authorized to change those schedule prior to the dissemination of a memorandum on March 20, 2012 by Steele.  Pl.'s 2d Opp. at 29–30.  But this unsupported assertion of fact is contrary to the evidence in the record, including plaintiff's own exhibits.  On April 20, 2011, plaintiff signed and thereby acknowledged receipt of a memorandum that said, in clear terms, that "[o]nly Project Managers shall approve all leave requests" and that "[u]nder NO circumstance will a shift supervisor approve any officer's leave."  *See* Ex. E to Henninger Decl. at 94; Ex. 17 to Pl.'s 2d Opp. [Dkt. # 67-4] at 2–3; Ex. 4 to Pl.'s 2d Opp. [Dkt. # 67-1] at 10.  So plaintiff's claim that the imposition of discipline must have been the product of improper bias because the policy being enforced did not apply at the time is not supported by the record, and it does not supply the proof needed to carry plaintiff's burden.

Second, plaintiff argues that the decision to discipline him for the bathroom incident was pretextual because it was his obligation as the Shift Supervisor to direct his attention to the emergency alarm, and he attempted to reach another officer to relieve Officer Causey, but the radios were broken at the time.  Ex. 30 to Pl.'s 2d Opp. [Dkt. # 67-8] at 11.  But plaintiff does not point to record evidence to confirm this circumstance.[16]  And while plaintiff may have reason to disagree with his supervisors about what his priorities should have been at that moment and

---

16     Instead, he relies on a letter that he sent to CIS's parent company, Akal Security, to challenge the suspension. Ex. 29 to Pl.'s 2d Opp. [Dkt. # 67-8] at 20.  Plaintiff's exhibits include a number of similar multi-page self-serving letters, emails, and memoranda to CIS management. *See, e.g.*, Exs. 5, 8, 30, 37 to Pl.'s 2d Opp.  Those letters, emails, and memoranda have little evidentiary value.  *See Jackson*, 595 F. Supp. 2d at 36; *Fields*, 520 F. Supp. 2d at 105.

whether the level of discipline he received was warranted under the circumstances, plaintiff has completely failed to put forward any evidence of discriminatory animus based on either his age or his national origin.

Plaintiff's submission of his own declaration, along with the exhibits that consist of his own efforts to voice his grievances, *see* Berry Decl.; Exs. 30, 37 to Pl.'s 2d Opp., is not enough to avert the award of summary judgment in this case. *See, e.g.*, *Mianulli v. Potter*, 634 F. Supp. 2d 90, 97 (D.D.C. 2009) (rejecting a disparate treatment discrimination claim because the plaintiff "offered no evidence . . . to support the self-serving and conclusory allegation that the deadlines were in fact unreasonable or that the deadlines were a result of his race or color"); *Bonieskie v. Mukasey*, 540 F. Supp. 2d 190, 195 (D.D.C. 2008) ("Summary judgment for a defendant is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving, conclusory statements."); *Fields*, 520 F. Supp. 2d at 105 (noting that "[s]elf-serving testimony does not create genuine issues of material fact" for purposes of summary judgment).

Because plaintiff cannot rebut defendant's legitimate and nondiscriminatory reasons for suspending, demoting, and transferring him, the Court will grant summary judgment to defendant on Counts III and V.[17]

---

17     Even if plaintiff had rebutted the non-discriminatory reason for the adverse actions, his age discrimination claim would face an additional hurdle – plaintiff cannot show that age was the "but for" cause of the adverse actions. *See Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176 (2009). Plaintiff admitted at his deposition that he was "beginning to feel that it's much more to do with nationality than age," and that he thinks "younger people were probably preferred as less threatening." Pl.'s Dep. at 172. Plaintiff's equivocations – that the adverse actions were due more to national origin than age, and that younger people were "probably" preferred – would not support his burden to show that age was a "but for" cause of the adverse actions. And plaintiff's suspicions alone would be insufficient at this stage in any event. For that independent reason, Count V would fail as well.

**II.    Plaintiff's retaliation claims fail because he has not demonstrated a causal connection between his protected activity and the adverse employment actions.**

Plaintiff claims in Counts II and IV that defendant violated the D.C. Human Rights Act (Count II) and the ADEA (Count IV) when it demoted, and transferred him after the bathroom incident, in retaliation for his protected activity of complaining about discrimination in the 2011 promotion decision.  2d Am. Compl. ¶¶ 94–99; 109–115.  Additionally, plaintiff alleges that his suspension over the key incident and the issuance of the final warning letter in June 2013 constituted retaliation in violation of Title VII (Count VI).  *Id.* ¶¶ 123–28.

To establish a *prima facie* case of retaliation, "the plaintiff must present evidence that (1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) the adverse action was causally related to the exercise of [his] rights." *Holcomb*, 433 F.3d at 901–02.  Title VII's anti-retaliation provision makes it unlawful for "an employer [to] 'discriminate against' an employee . . . because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006), quoting 42 U.S.C. § 2000e-3(a).  The same standards apply to ADEA and DCHRA claims.  *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009), citing *Carter v. George Wash. Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004); *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 577 (D.C. Cir. 2010), citing *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 235–36 n.3 (D.C. Cir. 1999).  As the D.C. Circuit has explained, once the defendant has put forth a legitimate and nondiscriminatory reason for its action, "the only question is whether the employee's evidence creates a material dispute on the ultimate issue of retaliation 'either directly by [showing] that a discriminatory reason more likely motivated the employer or indirectly by showing that the

employer's proffered explanation is unworthy of credence.'" *Bernanke*, 557 F.3d at 678, quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983).

Unlike in the discrimination context, there are no "mixed motive" retaliation claims; the plaintiff must establish that retaliation was the "but-for cause" of the adverse action in order to survive summary judgment. *Nassar*, 133 S. Ct. at 2533. "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.*

Plaintiff devotes more than ten pages of his brief arguing that he engaged in protected activity and was subject to one or more adverse employment actions. Pl.'s 2d Opp. at 13–24. But defendant had already conceded both of those points. *See* Def.'s Suppl. Mem. at 22, citing Ex. U to Henninger Decl. And plaintiff utilizes only two paragraphs to address the key question – whether there was a causal connection between the protected activity and the adverse employment actions. Pl.'s 2d Opp. at 24–25. Plaintiff argues simply that each incident of discipline was procedurally improper under the CBA and was part of a campaign to "discredit" him. *Id.*

The Court may infer a causal connection between protected activity and an adverse employment action on a "showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985); *see also Holcomb*, 433 F.2d at 903. But here, plaintiff cannot show causation in that manner because the adverse employment actions did not occur close in time to the protected activity. Courts in this district "often follow[] a three-month rule to establish causation on the basis of temporal proximity alone." *McIntyre v. Peters*, 460 F. Supp. 2d 125, 133 (D.D.C. 2006); *see Clark Cty. Sch. District v. Breeden*, 532 U.S. 268, 273 (2001)

(temporal proximity between employer's knowledge of protected activity and adverse employment action must be "very close").

Plaintiff engaged in protected activity on November 21, 2011, when he complained that his non-selection as a shift supervisor, and some of the PARs in Fall 2011, constituted age discrimination. *See* Ex. U to Henninger Decl. at 135; *see also* Exs. G–L to Henninger Decl. (August to November 2011 PARs). Plaintiff asserts that in retaliation for that activity, he was suspended on June 28, 2012, 2d Am. Compl. ¶ 95, demoted on September 6, 2012, 2d Am. Compl. ¶ 111, suspended on June 22, 2013, 2d Am. Compl. ¶ 125, and issued a final warning letter on August 9, 2013. 2d Am. Compl. ¶ 125.[18] None of those adverse actions – the first of which took place a full seven months after plaintiff's complaint and which spanned a period of more than twenty months – was close enough in time to the November 2011 protected activity to create an inference of causation. And plaintiff has failed to come forward with any other evidence – as opposed to mere argument – related to the existence of retaliatory animus. *See Ginger*, 527 F.3d at 1346-47 (finding that it was appropriate for the District Court to dismiss a claim of retaliation based solely on the plaintiffs' conclusory statements: "In sum, they assert the policy was retaliatory, but they proffered no evidence upon the basis of which a reasonable jury could agree").

---

18    Plaintiff's opposition also connects the protected activity of complaining to management by letter in 2011 and 2012, and the filing this lawsuit in 2012, to the adverse personnel action of being suspended in 2012. Pl.'s 2d Opp. at 33, citing Pl.'s Ex. 37; *see also* Pl.'s 3d Opp. at 3 (alleging that plaintiff filed a complaint with the EEOC in November 2012, and that complaint formed the basis for the discipline for the key incident in June 2013). But plaintiff also argues that "it is clear that the disciplinary actions taken against [p]laintiff have their roots in the decision to deny him the promotion to the position of shift supervisor," Pl.'s 2d Opp. at 37, which took place in 2011, and the amended complaint seems to refer only to the 2011 protected activity. 2d Am. Compl. ¶¶ 110–11. In any event, even if the Court were to consider the 2012 protected activity, plaintiff cannot show the required temporal proximity between his 2012 EEOC complaint and 2013 discipline for the key incident, nor has he put forth facts from which one could conclude that imposing disciplinary action for an undisputed infraction was retaliatory.

The defendant has produced evidence of numerous instances of inappropriate conduct, insubordination, and failure to comply with rules and procedures, which were followed by repeated warnings and instructions. Plaintiff does not contend that the misconduct did not take place; he questions whether the level of discipline imposed was just under the terms of the collective bargaining agreement. Because plaintiff was disciplined for misconduct that occurred long after his protected activity, and plaintiff has failed to point to any other facts that would establish the causal connection, the Court cannot find that plaintiff's protected activity in 2011 was the "but for" cause of the adverse personnel actions that Coastal took in 2012 and 2013. For those reasons, defendant is entitled to summary judgment on Counts II, IV, and VI.[19]

## CONCLUSION

For the foregoing reasons, the Court will grant defendant's motions for summary judgment. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 15, 2016

---

[19]    In any event, plaintiff cannot rebut defendant's argument that the adverse employment actions were not retaliatory, but instead were legitimate and nondiscriminatory. *See* Def.'s Suppl. Mem. at 24–25. Plaintiff counters, like he did for the discrimination counts, that he can rebut the defendant's reasons by showing that defendant failed to follow the procedural requirements of the CBA. Pl.'s 2d Opp. at 25-28. For the same reasons discussed above, plaintiff's argument is unpersuasive; plaintiff has not pointed to evidence that would rebut the legitimate and nondiscriminatory explanation for CIS's conduct – namely, that plaintiff had performance issues at work.